**Larry THOMPSON and Dwayne Thompson, Appellants,**

v.

**FAYETTE COUNTY PUBLIC SCHOOLS, Tates Creek High School, Dwight Price and Donald Adkins, Appellees.**

No. 89–CA–593–MR.

Court of Appeals of Kentucky.

March 30, 1990.

William Lloyd Turner, Winchester, for appellants.

George F. Allgeier, Jr., Wylie & Sloan, Lexington, John C. Fogle, Bryan, Fogle & Chenoweth, Mt. Sterling, for appellees.

Before EMBERTON, REYNOLDS and WEST, JJ.

REYNOLDS, Judge.

This appeal arises from a suit in Fayette Circuit Court alleging that Dwayne Thompson, a student at Tates Creek High School, was wrongfully prevented from participating in the interscholastic sport of wrestling

because of his failure to maintain a satisfactory grade average. Thompson was precluded from wrestling on December 8, 1988, after the beginning of the season in October.

The school board policy requires a high school student to maintain a 2.0 grade point average in five of six classes to remain eligible to participate in extracurricular activities. Dwayne Thompson received one B, two C's and three D's for his last grading period before being excluded from sport participation. Even though one D is not averaged, the grade point average falls below the 2.0 requisite. Thompson was declared ineligible until his grades improved. When Thompson's father filed his pro se complaint he also filed two motions for a restraining order which were denied.

Appellees filed a motion to dismiss for failure to state a claim and on February 13, 1989, after several admonishments advising appellants to retain counsel, the trial court granted the motion to dismiss. Thereafter, counsel was obtained by appellants and this appeal follows.

■ Appellants claim that Dwayne's exclusion from the wrestling team constitutes a civil rights violation of constitutional dimensions and seek to establish the existence of a property right within the realm of interscholastic athletic activity. We hold that a specific reference to state law is required to determine the existence of a property right and a legitimate claim of entitlement. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). According to *Brands v. Sheldon Community School,* 671 F.Supp. 627 (N.D. Iowa, W.D.1987), interscholastic activities are only a mere expectation and do not amount to an entitlement. It was held:

> The equal protection claim must be rejected because the plaintiff has not alleged that he was treated differently because of his race, ethnicity, gender, or any other suspect classification, and his interests in wrestling or receiving a college scholarship are not among the small set of rights fundamental enough to warrant separate protection under the equal protection clause.

*Brands, supra.*

Appellants seek to distinguish *Kentucky High School Athletic Association v. Hopkins County Board of Education,* Ky. App., 552 S.W.2d 685 (1972), but we find this case accurately and correctly addresses the entitlement issue involving extracurricular activities. The *Hopkins, supra,* court found that there are no constitutionally protected civil rights in interscholastic athletics by laws limiting eligibility. There is little distinction, if any, between the ineligibility arising from a transfer from the failure to comply with academic standards, as appellants claim. *Palmer v. Merluzzi,* 689 F.Supp. 400 (D.C.N.J.1988), a case which summarizes the majority and minority views on this issue encompasses *Hopkins, supra,* within the majority framework.

There is no allegation that school authorities could or did waive eligibility rules on an ad hoc basis for selected students.

Appellants cite *Boyd v. Board of Directors of McGehee School District,* 612 F.Supp. 86 (D.C.Ark.1985), as precedent for their argument. We distinguish this authority from the present case as it deals with racial discrimination and raises first amendment implications.

Similarly, *Florida High School Athletic Association v. Bryant,* 313 So.2d 57 (1975), is distinguishable where a student was released from the basketball team for misconduct; but, the court found basketball an important and vital part of the student's life, providing an impetus for his general scholastic and social development while therapeutic in his rehabilitation as a juvenile delinquent.

This case is not about a school system embarrassing a young man or punishing him for misconduct, but is solely about education and ensuring that the educational property right is not squandered or misused. Presently the 2.0 grade average

should be viewed as an impetus for a student to maintain an acceptable average or rectify a subpar scholastic performance, just as basketball in *Bryant, supra,* provided a juvenile delinquent with a reason to stay out of trouble.

In *Tiffany v. Arizona Interscholastic Association, Inc.,* 151 Ariz. 134, 726 P.2d 231 (1986), an overage athlete applied with the AIA for a hardship waiver, which would allow him to participate in interscholastic sports. Although the AIA by-laws specifically provide that its executive board will exercise discretion in considering hardship waivers to its eligibility rules, the undisputed fact is that the board had adopted a policy to not make exceptions to the 19-year old eligibility requirement. Even though it is elementary that administrative boards must follow their own rules and regulations, a failure to do so does not create a constitutional due process right on behalf of a party who suffers a wrong at the hands of the administrative body. *Tiffany, supra,* is distinguished.

■ Basically we are faced with a board policy which states that no student may participate in interscholastic activities if his grade average for any grading period drops below a 2.0. Presently, Dwayne Thompson failed to maintain a 2.0 grade average and was released from the wrestling team. The authorities do not support appellants' claim of a property or liberty interest infringement and no hearing is available as there was no entitlement to one. Appellant's ineligibility was based on his uncontroverted failure to make his grades and not mere allegation.

■ The trial court was similarly correct in ruling that the assistant superintendent, Dwight C. Price, was allowed no discretion in the matter by virtue of KRS 161.790. In fact, it is his duty "to see that ... the regulations and policies of the district board of education are carried into effect." KRS 160.370. No allegation was made concerning the connection of the other named defendant, Donald Atkins, with the school system nor that he had any connection or authority over Dwayne Thompson. As a result, the trial court properly held that the complaint failed to state a claim against either Price or Adkins.

Since appellant had no property or liberty interest as a participant on the wrestling team, we find no substantive federal or state constitutional right being violated and as such there are no proper claims existing under the federal civil rights act.

■ The school board's policy is designed to minimize outside activities which distract from academic endeavors while providing incentive to make acceptable grades so the eligibility may again be retained. This policy does not in any way exceed the reasonable and legitimate interests of the school system. *Kentucky Milk Marketing v. Kroger Co.,* Ky., 691 S.W.2d 893 (1985). The appellants have no claim under Section 2 of the Kentucky Constitution as the policy is reasonable and without arbitrariness.

While the language of this appeal may be construed as asserting a viable claim under 42 U.S.C. § 1983, this type claim depends on the existence of either a fundamental or a vested property right. As stated aforesaid, a student has neither a property interest nor any fundamental right to participate in extracurricular activities in Kentucky. *Hopkins, supra.*

The trial court is affirmed.

All concur.